UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JUAN V. BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:24-cv-00216-SRC |
| RONNIE HAMPTON and LUCAS HAMPTON, | ) ) ) ) |
| Defendants. | ) ) |

### Memorandum and Order

Juan Brown claims that two corrections officers at the Farmington Correctional Center—Ronnie Hampton and Lucas Hampton—used excessive force against him in derogation of the Eighth Amendment. The Hamptons disagree. They contend that they used no more force than was necessary to restore order in the prison, and they accordingly move for summary judgment on two of Brown's excessive-force claims. The Court agrees with the Hamptons, so it grants their motion.

**I.      Background**

   **A.      Factual background**

The Court finds the following facts undisputed for summary-judgment purposes. Under Local Rule 4.01(E), "[a]ll matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 4.01(E). In response to the Hamptons' summary-judgment motion, Brown filed two things: (1) a response and (2) an objection to one of the Hamptons' exhibits. Docs. 110–11. In neither of those two filings does Brown specifically address any of the facts in the Hamptons' Statement of Uncontroverted Material

Facts.  *See* docs. 110–11; doc. 105.  But the Court liberally construes Brown's filings and identifies disputed facts where Brown points to evidence in the record that gives rise to a factual dispute.

Additionally, "[a] plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint."  *Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994 (8th Cir. 2001) (first citing *Watson v. Jones*, 980 F.2d 1165, 1166 (8th Cir. 1992); and then citing 28 U.S.C. § 1746).  Brown's operative complaint, doc. 51, consists of three filings:  (1) Brown's original complaint, doc. 1; (2) Brown's first set of supplemental allegations, doc. 43; and (3) Brown's second set of supplemental allegations, doc. 48.  The first and third filings satisfy the requirements of a verified complaint.  *See* doc. 1 at 15 (declaring "under penalty of perjury that the foregoing is true and correct" and including the date and Brown's signature) (The Court cites to page numbers as assigned by CM/ECF.); doc. 48 at 2 (same); doc. 51 at 15, 26 (same).  The second filing does not.  *See* doc. 43; *see also* doc. 51 at 21–22.  Thus, of the 27 pages that comprise Brown's operative complaint, all pages, except pages 21 through 24, satisfy the requirements of a verified complaint.  *See Roberson*, 241 F.3d at 994.  Where the verified portions of Brown's complaint contradict the Hamptons' Statement of Uncontroverted Material Facts, the Court identifies factual disputes.  *See id.* at 995 (reversing grant of unopposed motion for summary judgment where the plaintiff's "statements in the [verified] complaint were sufficient to create a genuine fact issue sufficient to survive the . . . motion").

Brown alleges that the defendants are brothers.  Doc. 64 at 3.  In their filings, Defendants do not address kinship.  For the sake of clarity, and not to imply familiarity, the Court refers to the defendants collectively as "the Hamptons" and individually by their first names.

2

Brown was incarcerated at the Farmington Correctional Center between August 2023 and June 2024.  Doc. 105 at ¶ 1 (citing doc. 51 at 5–6, doc. 60 at 1–2); *see* docs. 51, 110 (failing to controvert this fact).  At that time, the Hamptons worked as correctional officers at the same prison.  Doc. 105 at ¶ 2 (citing doc. 105-1 at ¶¶ 2, 4; doc. 105-2 at ¶¶ 2, 4); *see* docs. 51, 110 (failing to controvert this fact).  Two incidents bear relevance here:  one took place on August 22, 2023, and the other took place on September 8, 2023.

On August 22, 2023, Ronnie supervised one of the prison yards, and Lucas worked in one of the housing units.  Doc. 105 at ¶¶ 3–4 (citing doc. 105-1 at ¶ 5; doc. 105-2 at ¶¶ 4–5); *see* docs. 51, 110 (failing to controvert this fact).  The record shows that Brown approached Ronnie, yelled at him, used foul language, and verbally threatened to assault him.  *See* doc. 105-1 at ¶ 6; *see* docs. 51, 110 (failing to controvert this fact).  Although the Hamptons did not explicitly include this fact in their joint statement of uncontroverted material facts, *see* doc. 105, Ronnie's affidavit describes this fact, *see* doc. 105-1 at ¶ 6, and the joint statement of uncontroverted material facts cites to the relevant portion of Ronnie's affidavit, *see* doc. 105 at ¶ 10 (citing doc. 105-1 at ¶¶ 5–6, 8); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").  And Brown does not controvert this fact.  *See* docs. 51, 110.

The record shows that, in response, Ronnie placed hand restraints on Brown and escorted Brown to the housing unit where Lucas was working.  Doc. 105 at ¶ 8 (citing doc. 105-1 at ¶¶ 7, 9–10); *see* doc. 105-1 at ¶ 7; docs. 51, 110 (failing to controvert this fact).  Ronnie placed Brown on a bench, released Brown to the supervision of the officers in the housing unit, and left the housing unit.  Doc. 105 at ¶ 6 (citing doc. 105-1 at ¶ 10, doc. 105-2 at ¶ 5); *see* docs. 51, 110 (failing to controvert this fact).

Ronnie denies that he twisted Brown's arm or made any other physical contact with Brown besides placing him in hand restraints and escorting him to the housing unit.  Doc. 105 at ¶ 8 (citing doc. 105-1 at ¶¶ 7, 9–10); *see* doc. 105-1 at ¶ 7.  In a declaration attached to his summary-judgment response, Brown states that, on August 22, 2023, Ronnie "twisted [his] arm, made threats [and unspecified] racial comments" and "falsely put [him] in the hole."  Doc. 110 at 9.  And in a verified portion of his complaint, Brown recounts that, during this incident, Ronnie "twist[ed] [Brown's] left arm and wrist and ma[de] threatening statements saying he would teach [Brown's] n*gger *** who controls the whipping stick or who controls the stick whipping in these parts of Missouri."  Doc. 51 at 7 (expletive alteration added).

The Court finds that the parties genuinely dispute whether Ronnie twisted Brown's arm, placed Brown in solitary confinement, and made the statement that Brown describes in his verified complaint.  The Court assumes, for summary-judgment purposes only, that Ronnie twisted Brown's arm, placed Brown in solitary confinement, and made threats to, and leveled abhorrent racial slurs at, Brown.  *See Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650 (8th Cir. 1996) (holding that, when factual disputes exist at summary judgment, the court must "take all facts and reasonable inferences in the light most favorable to the nonmoving party").  Below the Court discusses whether this is a "material fact" for purposes of summary judgment.  Fed. R. Civ. P. 56(a).

Lucas escorted Brown into a cell.  Doc. 105 at ¶ 7 (citing doc. 105-2 at ¶ 6); *see* docs. 51, 110 (failing to controvert this fact).  The only physical contact that Lucas made with Brown was "holding his arm during the escort and patting [Brown] down" during a search of Brown in the cell.  Doc. 105 at ¶ 9 (citing doc. 105-2 at ¶ 6); *see* docs. 51, 110 (failing to controvert this fact).

4

Fast forward to the morning of September 8, 2023.  Someone called officers to a situation in a cell on the upper floor of one of the housing units.  Doc. 105 at ¶ 11 (citing doc. 105-1 at ¶ 15); *see* docs. 51, 110 (failing to controvert this fact).  Ronnie, whom video evidence shows was downstairs, attempted to respond to the situation.  Doc. 105 at ¶ 12 (first citing doc. 105-1 at ¶ 15; and then citing Ex. 3 at 8:40:07.693 a.m.–8:40:26.311 a.m.); *see* docs. 51, 110 (failing to controvert this fact).  But as Ronnie tried to get up the stairwell, Brown blocked his path.  Doc. 105 at ¶ 12 (first citing doc. 105-1 at ¶ 15; and then citing Ex. 3 at 8:40:07.693 a.m.–8:40:26.311 a.m.); *see* docs. 51, 110 (failing to controvert this fact).  The video evidence shows an unrestrained Brown walking towards the stairwell in front of Ronnie and then pausing at the base of the stairwell with his arms extended to block Ronnie from getting up the stairwell.  Ex. 3 at 8:40:05.991 a.m.–8:40:13.499 a.m.; *see* docs. 51, 110 (failing to controvert this evidence).

Ronnie verbally directed Brown to allow staff to pass, but Brown refused to comply.  Doc. 105 at ¶ 13 (first citing doc. 105-1 at ¶ 16; and then citing Ex. 3 at 8:40:07.693 a.m.–8:40:26.311 a.m.); *see* docs. 51, 110 (failing to controvert this fact).  Though the video footage has no sound, it tends to corroborate this undisputed fact, as it shows that Brown turned to face Ronnie without getting out of the way for several seconds.  Ex. 3 at 8:40:12.898 a.m.–8:40:26.211 a.m.; *see* docs. 51, 110 (failing to controvert this evidence).  Ronnie then "directed . . . Brown to submit to wrist restraints," but "Brown refused to put his hands forward or turn around for restraints."  Doc. 105 at ¶ 14 (first citing doc. 105-1 at ¶ 16; and then citing Ex. 3 at 8:40:07.693 a.m.–8:40:26.311 a.m.); *see* docs. 51, 110 (failing to controvert this fact).  Though the video footage has no sound, it tends to corroborate this undisputed fact, as it shows that Brown walked away from Ronnie without submitting to wrist restraints.  Ex. 3 at 8:40:19.404 a.m.–8:40:36.722 a.m.; *see* docs. 51, 110 (failing to controvert this evidence).  When Ronnie

5

attempted to place hand restraints on Brown, Brown "jerked his arm away, balled his fists, and moved towards . . . Ronnie . . . in an aggressive manner." Doc. 105 at ¶ 16 (first citing doc. 105-1 at ¶ 16; and then citing Ex. 3 at 8:40:35.821 a.m.–8:40:39.925 a.m.); *see* docs. 51, 110 (failing to controvert this fact). Again, the video footage corroborates this undisputed fact. Ex. 3 at 8:40:36.722 a.m.–8:40:38.524 a.m.; *see* docs. 51, 110 (failing to controvert this evidence).

Ronnie "then applied a short burst of pepper spray to . . . Brown." Doc. 105 at ¶ 17 (first citing doc. 105-1 at ¶ 16; and then citing Ex. 3 at 8:40:41.226 a.m.–8:40:45.831 a.m.); *see* docs. 51, 110 (failing to controvert this fact). Again, the video footage corroborates this undisputed fact. Ex. 3 at 8:40:38.423 AM–8:40:46.331 AM. After that, two other staff members approached Brown and Ronnie and verbally directed Brown, once again, "to submit to hand restraints." Doc. 105 at ¶ 18 (first citing doc. 105-1 at ¶ 16; and then citing Ex. 3 at 8:40:43.028 a.m.–8:40:57.242 a.m.); *see* docs. 51, 110 (failing to controvert this fact). Although the video footage contains no sound, it tends to corroborate this undisputed fact, as it shows that two people (apparently staff members) approached Brown and Ronnie and that Brown did not put his hands behind his back or otherwise submit to hand restraints. Ex. 3 at 8:40:46.231 a.m.–8:40:58.243 a.m.; *see* docs. 51, 110 (failing to controvert this evidence).

Ronnie then "applied a second short burst of pepper spray and was then able to get . . . Brown to comply with hand restraints." Doc. 105 at ¶ 19 (first citing doc. 105-1 at ¶¶ 16–17; and then citing Ex. 3 at 8:40:57.242 a.m.–8:41:07.352 a.m.); *see* docs. 51, 110 (failing to controvert this evidence). Once more, the video footage tends to corroborate this undisputed fact. Ex. 3 at 8:40:52.137 a.m.–8:41:10.155 a.m.; *see* docs. 51, 110 (failing to controvert this evidence). After that, Lucas took Brown to a cell and searched him. Doc. 105 at ¶ 21 (citing doc. 105-2 at ¶¶ 5–6); *see* docs. 51, 110 (failing to controvert this fact).

6

Brown states that he "strongly deny [sic] and dispute [sic] . . . Defendant Ronnie Hampton's allegations concerning [the] September 8, 2023 use of pepper spray." Doc. 110 at 7. Even if Brown had included this denial in an otherwise-admissible affidavit, it would not establish a genuine dispute of fact. *See Keiran v. Home Cap., Inc.*, 858 F.3d 1127, 1132 (8th Cir. 2017) (noting that "it is black letter summary judgment law that a conclusory, self-serving affidavit will not defeat an otherwise meritorious summary judgment motion" (citing *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015))).

Brown also states, while pointing to "MDOC00046" and "MDOC00086," that Ronnie "tried to yank [him] OFF the stairs" and "made verb [sic] threats and physical attempts to assault [him]" such that Brown "feared for his safety." Doc. 110 at 7. But Brown fails to attach "MDOC00046" and MDOC00086" to his summary-judgment response. *See* doc. 110; *see also* E.D.Mo.L.R. 4.01(B) ("If any memorandum in opposition requires consideration of facts not appearing in the record, the party must file with its memorandum all documentary evidence relied upon."). And the video footage of the incident—the authenticity of which Brown does not challenge, *see* doc. 110—blatantly contradicts the physical-assault allegations. Indeed, at no point does the video show that Ronnie made movements indicative of yanking Brown off the stairs or physically assaulting Brown before Brown made an aggressive move toward Ronnie. *See* Ex. 3 at 8:40:11.196 AM–8:40:42.528 AM; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

A verified portion of Brown's complaint says that Ronnie "used verbal threats of intimidation to subdue [Brown] to a [d]isorientated [sic] state of [m]ind by alledging [sic] false

7

acts of conduct." Doc. 51 at 7. The Court assumes, for summary-judgment purposes, that Ronnie made unspecified "[v]erbal threats of intimidation" to Brown and that Ronnie falsely accused Brown of unspecified "false acts of conduct." *Id.* Below, the Court discusses whether this is a "material fact" for purposes of summary judgment. Fed. R. Civ. P. 56(a).

### B. Procedural background

In February 2024, Brown sued numerous corrections officers in both their individual and official capacities. Doc. 1. The Court dismissed all Brown's claims except the individual-capacity claims against the Hamptons. Doc. 8 at 10. Brown has asked the Court to reconsider those dismissals five times. *See* docs. 13, 44, 54, 58, 107. The Court denied each of Brown's first four requests, docs. 17, 45, 55, 61, and it takes up his fifth request below, *see infra* Section III.A.1.

In October and November 2024, the Court allowed Brown to supplement his complaint with allegations of events that allegedly took place after Brown filed his initial complaint. Docs. 45, 50. The operative complaint contains scores of allegations. Doc. 51. In addition to allegations about the incidents described above, Brown alleges that the Hamptons, in retaliation for Brown's suit, directed the prison to keep Brown on suicide watch without a blanket, such that Brown suffered a slight fever and numbness in his feet and toes. *See* doc. 51 at 21–22.

In February 2025, the Hamptons moved for summary judgment on Brown's claims related to the incidents that took place on August 22, 2023, and September 8, 2023. Docs. 103–05. The Court addresses some preliminary issues and then takes up their motion.

### II. Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

8

and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, "the court is required to view the evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts." *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987) (first citing *Econ. Hous. Co. v. Cont'l Forest Prods., Inc.*, 757 F.2d 200, 203 (8th Cir. 1985); and then citing *Holloway v. Lockhart*, 813 F.2d 874, 876 (8th Cir. 1987)). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007) (alteration in original) (quoting *Scott*, 550 U.S. at 378). Yet "this does not mean that the court should 'deny summary judgment any time a material issue of fact remains on the [constitutional violation] claim.'" *Id.* (alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Instead, "the court must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe [them].'" *Id.* (alterations in original) (quoting *Scott*, 550 U.S. at 380).

**III.     Discussion**

    **A.     Preliminary issues**

        **1.     Brown's fifth motion for reconsideration**

Brown asks the Court to reconsider its prior dismissal of Brown's claims against case manager John Pyatt. Doc. 107. The Court denies Brown's motion for the same reasons that it has denied similar motions that Brown has filed earlier in the case. *See* docs. 17, 45, 55 61.

9

### 2. Brown's objection to the Hamptons' summary-judgment exhibit

After the Hamptons filed their summary-judgment motion, Brown filed an "objection" to one of the Hamptons' exhibits attached to their summary-judgment motion. Doc. 111 at 1. But Brown appears to be mistaken about the Hamptons' exhibits. Brown objects to the use of "Farmington Correctional Center Complaint # F.C.C. 23-1180" as inadmissible. *Id.* But the Hamptons did not attach—or even reference—that document anywhere in their summary-judgment papers. *See* docs. 103–05. Thus, the Court overrules Brown's objection. Doc. 111.

### 3. The Hamptons' motion to strike Brown's surreply

After the Hamptons filed their reply brief on their summary-judgment motion, Brown filed a surreply brief. Doc. 115. The Hamptons move to strike the surreply. Doc. 116.

The Local Rules allow only three memoranda for each motion: (1) a memorandum in support of the motion, (2) a memorandum in opposition to the motion, and (3) a reply memorandum. *See* E.D. Mo. L.R. 4.01. "Additional memoranda may be filed by either party only with leave of Court." E.D. Mo. L.R. 4.01(C). "While the Court has discretion to permit a sur-reply where justice so requires, it does not allow them as a matter of course. In particular, a '[sur-reply] is unwarranted where the reply responds to the arguments in the [response brief] and does not raise new arguments.'" *Johnson v. City of Leadington*, No. 4:19-cv-02282-SEP, 2022 WL 179218, at *10 (E.D. Mo. Jan. 20, 2022) (citations omitted).

Here the Court finds Brown's surreply "unwarranted." *Id.* (citation omitted). Thus, the Court grants the Hamptons' Motion to Strike. Doc. 116. The Court therefore strikes Brown's surreply. Doc. 115.

10

### B.     The Hamptons' summary-judgment motion

The Hamptons move for summary judgment on Brown's claims of excessive force related to the August 22, 2023 and September 8, 2023 incidents.  Docs. 103–04.  The Court describes the Eighth Amendment excessive-force standard and then turns to the claims.

The Court reviews Eighth Amendment excessive-force claims under "a highly deferential standard." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017).  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  An Eighth Amendment excessive-force claim hinges on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)).  "Evidence 'that prison officials arguably erred in judgment' in deciding to use even deadly force 'falls far short of a showing that there was no plausible basis for [their] belief that this degree of force was necessary.'" *Id.* at 974–75 (alteration in original) (quoting *Whitley*, 475 U.S. at 323).  "If the evidence shows only 'a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives . . . the case should not go to the jury.'" *Id.* at 975 (alteration in original) (quoting *Whitley*, 475 U.S. at 322).

Defendants raise a qualified-immunity defense, doc. 104 at 7–8, and that bears relevance here, too.  "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Jackson*, 866 F.3d at 975 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[A] plaintiff opposing a properly supported summary judgment motion based on qualified immunity 'must identify affirmative evidence from which a jury could find that the

11

plaintiff has carried his or her burden of proving the pertinent motive.'" *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1988)).

### 1. August 22, 2023 incident

#### a. Claims against Ronnie

Here, even assuming that Ronnie twisted Brown's arm as Brown claims, *see* doc. 110 at 9, Brown has failed to identify any "affirmative evidence from which a jury could find that [Brown] has carried his . . . burden of proving the pertinent motive," *Jackson*, 866 F.3d at 975 (citation omitted). Indeed, as explained above, the parties do not dispute that, before Ronnie placed Brown in hand restraints, Brown approached Ronnie, yelled at him, used foul language, and verbally threatened to assault him. Doc. 105 at ¶ 10 (citing doc. 105-1 at ¶¶ 5–6, 8); *see* doc. 105-1 at ¶ 6; *see* docs. 51, 110 (failing to controvert this fact). In other words, Brown all but admits that he cannot establish that Ronnie acted with "a complete absence of penological purpose," which would give rise to an inference that Ronnie "acted maliciously in an effort to cause harm." *Jackson*, 866 F.3d at 977 (quoting *Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014)). And Brown does not provide any context for his declaration that Ronnie "twisted [his] arm." Doc. 110 at 9; *see* doc. 51 at 7. Nor does he describe the extent to which Ronnie twisted Brown's arm. *See* docs. 51, 110. Given that Brown admits that Ronnie subjected him to hand restraints, *see* doc. 105 at ¶ 8 (citing doc. 105-1 at ¶¶ 7, 9–10); doc. 105-1 at ¶ 7; *see* docs. 51, 110 (failing to controvert this fact), the Court cannot infer—solely from a broad allegation that Ronnie twisted Brown's arm in an unspecified manner—that Ronnie acted with an impertinent motive. And that means that the Court must grant summary judgment based on qualified immunity. *See Jackson*, 866 F.3d at 975.

12

Brown's statement that Ronnie used a racial slur and told Brown that he would teach him "who controls the whipping stick or who controls the stick whipping in these parts of Missouri," doc. 51 at 7, cannot establish an Eighth Amendment violation either, *see Hopson v. Fredericksen*, 961 F.2d 1374, 1378–79 (8th Cir. 1992) (affirming a directed verdict to a police officer on a section 1983 claim where the officer "uttered a racial slur" and "threatened to 'knock [the plaintiff's] remaining teeth out of his mouth' if he remained silent" because, in general, "mere verbal threats made by a state-actor do not constitute a [section] 1983 claim"); *see also Turner v. Mull*, 784 F.3d 485, 492, 495–96 (8th Cir. 2015) (citing *Hopson* with approval to support an affirmance of summary judgment in an Eighth Amendment case). Racial slurs no doubt lack any place in civilized society, even in the confines of incarceration. But here, the Court must answer a more difficult question: whether, in the context of the undisputed facts that Brown broke prison rules and verbally threatened to assault Ronnie, the use of a racial slur, coupled with a twist of Brown's arm, amounted to a form of punishment so excessive as to violate the Eighth Amendment. Given Eighth Circuit precedent and the facts—even in the light most favorable to Brown—the Court cannot answer that question in the affirmative.

Brown's contextless allegation that Ronnie "put [Brown] in the hole" for an unspecified period of time cannot establish an Eighth Amendment violation, either. Doc. 110 at 9. Once again, Brown fails to controvert that, by threatening Ronnie, he violated prison rules. Doc. 105 at ¶ 10 (citing doc. 105-1 at ¶¶ 5–6, 8); *see* docs. 51, 110 (failing to controvert this fact). His conduct thus warranted discipline, and "no Eighth Circuit case, and certainly no Supreme Court case, has ever held that" solitary confinement categorically "violates the Eighth Amendment." *Jackson*, 866 F.3d at 976. Brown's claim against Ronnie for the August 22, 2023 incident cannot survive summary judgment.

13

b.     **Claims against Lucas**

Brown's claim against Lucas related to this incident fares no better. Indeed, Brown fails to controvert that the only physical contact that Lucas made with Brown at the relevant time was "holding his arm during the escort" to Brown's cell and "patting [Brown] down" during a search of Brown in the cell. Doc. 105 at ¶ 9 (citing doc. 105-2 at ¶ 6); *see* docs. 51, 110 (failing to controvert this fact). That dooms Brown's claims against Lucas. *See Hudson*, 503 U.S. at 9–10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" (quoting *Whitley*, 475 U.S. at 327)).

2.     **September 8, 2023 incident**

Brown alleges an excessive-force claim against Ronnie only, and not against Lucas, for the September 8, 2023 incident. Doc. 51 at 7. The Court turns to that claim now.

The Eighth Circuit has repeatedly encouraged district courts to grant summary judgment on claims where a prison guard used chemical spray to control a recalcitrant inmate. *See, e.g.*, *Jones v. Shields*, 207 F.3d 491, 496–97 (8th Cir. 2000) (reversing denial of judgment as a matter of law and remanding with instructions to dismiss); *Burns*, 752 F.3d at 1140–42 (affirming grant of summary judgment); *Peterson v. Heinen*, 89 F.4th 628, 635–40 (8th Cir. 2023) (reversing denial of summary judgment as to five incidents involving the use of chemical spray). The few times where the Eighth Circuit has allowed excessive-force claims involving pepper spray to go to a jury, the claims "involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary 'super-soaker' quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force." *Burns*, 752 F.3d at 1140.

14

Here, the record does not show that Ronnie warned Brown before deploying pepper spray, but even assuming that Ronnie didn't warn Brown, that fact alone does not provide evidence of an impertinent motive. After all, as discussed above, both the undisputed facts and the video footage show that an unrestrained Brown repeatedly refused to submit to wrist restraints and then made a sudden, aggressive move toward Ronnie before Ronnie applied pepper spray. *See supra* Section I.A. At this point, not only did Brown display "recalcitran[ce]," *see Burns*, 752 F.3d at 1139 (citation omitted), but he also posed a threat both to Ronnie and to others nearby. And Ronnie applied the second burst of pepper spray only after Brown, still unrestrained, once again refused to submit to wrist restraints. *See supra* Section I.A.

Brown's allegation that Ronnie "used verbal threats of intimidation" against Brown and that Ronnie falsely accused Brown of certain "acts of conduct," doc. 51 at 7, even assumed true, does not move the needle. Once again, Brown fails to controvert the video evidence and the undisputed facts that Brown blocked Ronnie's path up the stairs, refused to submit to hand restraints, and then made an aggressive move toward Ronnie before Ronnie resorted to the use of pepper spray. *See supra* Section I.A. Thus, even in the light most favorable to Brown, the facts do not establish that Ronnie acted with "a complete absence of penological purpose," which would give rise to an inference that Ronnie "acted maliciously in an effort to cause harm." *Jackson*, 866 F.3d at 977. In other words, Brown cannot establish a *material* issue of fact about whether an Eighth Amendment violation occurred. *See id.*; *see also* Fed. R. Civ. P. 56(a).

In sum, the undisputed facts show that Brown cannot prove that Ronnie used the pepper spray with an unconstitutional motive. At best, the evidence shows "a mere dispute over the reasonableness" of the use of pepper spray. *Peterson*, 89 F.4th at 639 (quoting *Jackson*, 866 F.3d at 975). And that means that Brown's claim cannot go to the jury. *Id.* Accordingly, the

15

Court grants summary judgment to the Hamptons on Brown's claims related to the September 8, 2023 incident.

## IV.     Remaining claims

The Court notes that the Hamptons did not address all of Brown's colorable claims in their summary-judgment motion. Liberally construing Brown's operative complaint, the Court identifies two potential claims that remain. First, Brown alleges that, after Brown sued the Hamptons, Ronnie instructed prison officials to keep Brown on suicide watch without a blanket to the point that Brown "sufferd [sic] numb toes and [f]eet and a slight fever." Doc. 51 at 22. Second, Brown alleges that Ronnie "maced" Brown four times on September 8, 2024. *Id.* at 25–26.

Under Federal Rule of Civil Procedure 56(f), the Court may, "[a]fter giving notice and a reasonable time to respond," grant summary judgment in favor of a nonmoving party. *See Hubbard v. Parker*, 994 F.2d 529, 531 (8th Cir. 1993) (holding that "[a] federal district court may grant summary judgment pursuant to Fed. R. Civ. P. 56, *sua sponte*, 'provided that the party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted'" (quoting *Interco Inc. v. Nat'l Sur. Corp.*, 900 F.2d 1264, 1269 (8th Cir. 1990))). The Court questions whether Brown's remaining claims can survive summary judgment.

As for the claim related to keeping Brown on suicide watch without a blanket, the Court questions the claim's legal sufficiency. In *Williams v. Delo*, the Eighth Circuit reversed a district court's denial of summary judgment in an Eighth Amendment conditions-of-confinement case in part because Darryl Williams, the plaintiff, had "fail[ed] to create a triable case on the merits of

16

his . . . claim." 49 F.3d 442, 447 (8th Cir. 1995). The Eighth Circuit explained that, to prevail on a conditions-of-confinement claim, a plaintiff:

> must show that (1) the alleged deprivation [was], "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety," meaning that officials actually knew of and disregarded the risk.

*Id.* at 445 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). After Williams struck his visiting wife in the face and attempted to choke her, prison officials placed Williams in "temporary administrative segregation." *Id.* at 443–44. The officials ordered Williams to remove his clothes and, for four days, confined him to a cell with a light, a toilet, and a sink, but no water, mattress, toothbrush, toothpaste, deodorant, soap, sheets, blankets, pillowcases, pillows, or clothing. *Id.* at 444. Officials gave Williams "three meals each day, each of which consisted of a cold sandwich, fruit, and milk (which Williams did not like to drink)." *Id.*

The Eighth Circuit held that Williams had "failed to present any evidence tending to establish that the conditions in the strip cell denied him 'the minimal civilized measure of life's necessities.'" *Id.* at 445. The court explained that "Williams was given three meals a day, including liquid nourishment in the form of milk, and was sheltered from the elements." *Id.* And the evidence, at most, "show[ed] only that he felt some discomfort." *Id.* at 446. Finally, given Williams's belligerence, "the deprivation of personal property serve[d] the legitimate penological goals of preventing injury to the inmate, injury to corrections officials, and damage to the facility." *Id.* at 446.

Additionally, the Eighth Circuit reversed the denial of summary judgment because Williams had failed to show "that any of the prison officials named as defendants . . . knew of and disregarded an excessive risk to his health or safety." *Id.* at 446. The court explained that

17

"[a]bsent a showing of an objectively serious deprivation and subjective knowledge of an excessive risk on the part of prison officials," Williams could not show that the defendants "violated a clearly established Eighth Amendment right." *Id.* at 447.

Here, Brown alleges only that he "suffered numb toes and [f]eet" because the Hamptons denied him a blanket. Doc. 51 at 21–22. The Court questions whether that allegation alone, even if true, can support an Eighth Amendment conditions-of-confinement claim in light of *Williams*.

As for the second claim—the claim that Ronnie "maced" Brown four times on September 8, 2024, *id.* at 25–26—the Court questions the claim's factual predicate. Indeed, Brown filed— nearly two months before September 8, 2024—a notice that his address had changed to a different prison than the one at which Brown's other claims arose. *See* doc. 19 (notifying the Clerk of Court that Brown's address changed to the "Crossroad Correction Center" in Cameron, MO in July 2024); doc. 105 at ¶ 1 (noting that Brown was incarcerated at the Farmington Correctional Center between August 2023 and June 2024); *id.* at ¶ 2 (noting that the Hamptons worked as correctional officers at the Farmington Correctional Center at "all relevant times"); *see* docs. 51, 110 (failing to controvert these facts). The record shows no evidence that Ronnie ever visited Brown's new facility or otherwise had any connection to that facility at any relevant time.

Given these deficiencies in Brown's remaining claims, the Court sees little reason at this time why it should not grant the Hamptons summary judgment on the remaining claims but will await the benefit of further briefing before making a final decision. Accordingly, the Court orders Brown to, no later than September 8, 2025, file a supplemental brief explaining why the Court shouldn't grant the Hamptons summary judgment on the remaining claims. Additionally,

18

the Hamptons may (but do not have to) file, no later than August 29, 2025, a supplemental brief in support of summary judgment. Each party's brief must not exceed five pages, exclusive of a signature page and attachments. The parties may not file further briefing without leave of court.

## V.     Conclusion

Accordingly, the Court denies Brown's [107] Motion for Reconsideration and grants the Hamptons' [116] Motion to Strike Plaintiff's Sur-Reply. The Court strikes Brown's [115] Sur-Reply in Opposition to Motion for Summary Judgment. The Court grants the Hamptons' [103] Motion for Summary Judgment and dismisses, with prejudice, Brown's Eighth Amendment excessive-force claims against the Hamptons arising from the incidents of August 22, 2023, and September 8, 2023. The Court orders Brown to file, no later than September 8, 2025, a supplemental brief as required by this order. If Brown fails to file a supplemental brief by the deadline, then the Court may, without further notice, enter summary judgment in favor of the Hamptons on Brown's remaining claims. The Hamptons may file, no later than August 29, 2025, a supplemental brief in support of summary judgment. A separate judgment accompanies this Memorandum and Order.

So ordered this 8th day of August 2025.

_SL R. CL_
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

19